LEE KEMP V. THE STATE.

*No. 6974. Decided May 21.*

1. **Practice—Intent—Evidence.**—It is a rule of evidence that any circumstance tending to show the motive or intent accompanying an act is relevant and material where motive or intent is essential to make the act a crime, or to fix the grade of the crime.

2. **Same—Perjury—Arrest of Judgment.**—For perjury the indictment alleges, in substance, that Guy Hall having been tried and convicted for an assault to murder Sarah Hall, the defendant, in support of Guy Hall's motion for a new trial, made an

affidavit in which he falsely affirmed that he saw Sarah Hall a few minutes after she was injured, and she then told him that her injuries were slight, and that on the next day she admitted to him that she was not much hurt. Upon the ground that the statements in the affidavit assigned as perjury were not material to the issue, the accused moved in arrest of judgment, which motion was overruled. *Held*, that in view of the evidence in the case, the matter assigned as perjury was manifestly material to the issue, and the ruling of the court was correct.

**3. Same—Charge of the Court—Perjury.**—Under the Code of this State a conviction for perjury can be had only upon a confession in open court, or upon the direct, positive testimony of two witnesses, or of one witness strongly corroborated by other testimony, establishing the falsity of the statement assigned as perjury. In this case the charge of the court authorized the jury to convict upon circumstantial evidence alone. *Held*, error; especially in view of the character of evidence adduced on the trial.

APPEAL from the District Court of Goliad. Tried below before Hon. H. C. Pleasants.

This conviction was for perjury, and the penalty assessed by the jury was a term of five years in the penitentiary.

A. A. Herriman, city marshal of the town of Goliad, was the first witness for the State. He testified, in substance, that he was informed of the assault upon Sarah Hall by Guy Hall soon after it occurred, and went at once to the scene of the trouble. He then found Sarah Hall lying on the ground, face down, and in an apparently unconscious condition. She had a gash in the side of her head, two inches long, into which the witness inserted his finger, causing her to wince. Witness found a stick or club about two and a half feet long and about as large around as a man's arm. That stick had blood on it. Several parties were on the ground when witness arrived, and the defendant reached the scene a few minutes after the witness did. The witness then sent the defendant for help, and left himself in pursuit of Hall and did not return. Sarah Hall did not utter a word while the witness was with her on that day, but lay like one dead. The witness was under the rule during the trial of Guy Hall, but heard no person during that time or at any other time threaten the defendant if he testified in the Hall case.

L. A. Parker testified for the State, in substance, that he was the first person to reach Sarah Hall after she was knocked down. She made several attempts to raise her body upon her elbow, but dropped back. Witness asked her once what hurt her. She raised her head by resting her elbow on the ground, looked at witness, but said nothing. Herriman found the club about one hundred feet from the place where Sarah lay. Defendant returned after Herriman sent him after help, and with other persons removed Sarah into her mother's house. Up to that time Sarah had not spoken a word to anybody.

Dr. Lipscomb testified for the State, in substance, that he reached Sarah Hall at the time she was being taken into her mother's house. He then

examined her and found a gash about two inches long on her head.   She appeared to be "limp" and was cold.   She did not speak while witness was with her.   The witness called on the next day and found Sarah in bed apparently unconscious.   It was not impossible for the woman to have spoken after receiving the blow.   Even if rendered unconscious she might have spoken.   In reply to a question by the court the witness said that when he first saw Sarah Hall after she was hurt he thought "she was partially feigning—exaggerating."   In reply to a question by the State the witness said that upon examination he found the wound to be a more severe one than he first thought it was.   The third time witness saw Sarah was four or five days or perhaps a week after she was injured, when she came to his office for medicine.   The wound was then healing.

R. D. Newcomb testified that he was one of the jury which tried Guy Hall for assault with intent to murder Sarah Hall.   Defendant was placed on the stand as a witness by the State, and testified that he knew nothing whatever about the case.

Sarah Hall testified for the State that her husband, Guy Hall, struck her on the head early on Monday morning.   She knew nothing whatever after receiving that blow until late on the following Friday evening. She did not, so far as she had any knowledge, talk to the defendant after receiving the blow until she recovered.

The State next introduced in evidence the motion for new trial in Guy Hall's case, together with the supporting affidavit of the defendant, wherein the defendant set out that Sarah Hall told him a few minutes after she received the blow that she was not much hurt; that he, affiant, thought at the first that Sarah Hall was pretending to be more seriously hurt than she really was, and that on the day after she received the blow she told him that "the most that hurt her was her thumb," and proposed to accompany him, affiant, to a party on the night of that day.

Anna Anderson testified for the defense that she reached Sarah Hall soon after she received the blow, and while standing near the said Sarah she heard the defendant ask her how she was hurt, to which she replied that she "was not hurt much except her thumb."

Anna McCampbell testified for the defense that she went to see Sarah Hall on the morning after she received the blow.   She found her sitting by the fire and asked her what she was doing out of bed.   She replied that she was feeling better.   Witness told her to go back to bed, and as in her effort to walk to the bed she manifested considerable weakness, the witness helped her.   On her way out of the house the witness met Dr. Lipscomb going in.

Lizzie Gardner testified for the defense that she visited Sarah Hall on the morning after she received the blow.   She was then sitting up. On that evening the defendant came to the house, and Sarah asked him

to take her to a party that night, to which request the defendant replied that she was in no condition to go to a party.

*G. W. L. Fly*, for appellant.

*W. L. Davidson*, Assistant Attorney-General, for the State.

Willson, Judge.—In the prosecution of Guy Hall for an assault with intent to murder Sarah Hall, the *intent* with which the assault was committed was an essential issue. Bearing upon this issue, the character, extent, and effect of the injury inflicted upon Sarah Hall was, considering the other evidence in the case, an important inquiry. If the injury inflicted was slight, the presumption would be that he did not intend to kill her, because he had the power to inflict death and did not exercise the power. But if the injury inflicted was serious, the contrary presumption might be reasonably entertained. Any circumstance tending to show the motive or intent accompanying an act is relevant and material where motive or intent is essential to make the act a crime, or to fix the grade of the crime. Defendant's statements to the effect that Sarah Hall's injuries were slight, and that she admitted to him that she was not much hurt, etc., as set forth in the affidavit made by him in support of Guy Hall's motion for a new trial, were, in our opinion, material to the issue made by said motion, and the trial court did not err in so holding in its charge to the jury, and in overruling the motion in arrest of judgment.

By the third paragraph of the court's charge the jury was told that the evidence in the case was *wholly circumstantial*, and said paragraph then proceeds to explain the rules governing in such cases. This paragraph of the charge authorized the jury to convict upon *circumstantial evidence alone*. This was error. Under the Code of this State a conviction for perjury can not be had upon purely circumstantial evidence which is not virtually direct and positive. Such conviction can only be had upon a confession in open court, or upon the direct positive testimony of two witnesses, or of one witness corroborated strongly by other evidence, establishing the falsity of the statement assigned as perjury. Code Crim. Proc., art. 746; Maines v. The State, 26 Texas Ct. App., 14. This error in the charge was not corrected by any other portion of the charge, and was, we think, calculated to prejudice and injure the rights of the defendant, in view of the character of the evidence adduced against him, even conceding that the evidence of the falsity of defendant's statement was *not* wholly circumstantial. We are not prepared to say, however, that the evidence is not wholly circumstantial, and if it is, then said paragraph of the charge is manifestly erroneous and necessarily injurious to the defendant. Sarah Hall was the only witness who testified to the falsity of the defendant's statements, and her testimony was not positive,

but inferential—that is, that if she made the statements imputed to her in defendant's affidavit, she had no knowledge of having made them. She may have been unconscious from the effects of the blow inflicted upon her, and while in that condition may have made said statements. The evidence does not absolutely exclude this hypothesis. We are inclined to consider her testimony as circumstantial only, and to agree with the trial judge that the evidence is wholly circumstantial. Such being the character of the evidence, the jury should have been instructed that they could not convict upon it.

Because of the error in the charge above mentioned, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Judges all present and concurring.